Smile for Kids, Inc. d/b/a S4K ENTERTAINMENT GROUP; J.A.J. EXECUTIVE SERVICES, LLC, Plaintiffs,

against
The Madison Square Garden Company, Defendant.


652416/2016

Plaintiffs: 
Larry Hutcher, Esq. and Peter M. Ripin, Esq., Davidoff Hutcher & Citron, LLP, 605 Third Avenue, New York, NY 10158 
(212) 557-7200.
Defendant: 
Anthony J. Dreyer, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (212) 735-3000 and Lawrence J. Burian, Esq., General Counsel, The Madison Square Garden Company, Two Pennsylvania Plaza, New York, NY 10121 
(212) 465-6741


Barry R. Ostrager, J.

Plaintiffs Smile For Kids, Inc. d/b/a S4K Entertainment Group ("S4K") and J.A.J. Executive Services, LLC ("JAJ") are ticket agencies and resellers of tickets to sporting and other events. See Compl. ¶ 12. Plaintiffs claim they purchase season tickets to Knicks and Rangers games directly from The Madison Square Garden Company ("MSG") or from MSG's representatives, as well as from individual season ticket holders who chose to resell their tickets. Id. ¶ 14. Plaintiffs re-sell these tickets to their clients (individuals or corporations), or to the general public on online platforms such as StubHub.com. Id. ¶¶ 13, 15. S4K has also developed a "cloud" platform which enables ticket holders to independently list and sell their tickets to the general public, a service for which S4K receives compensation. Id. ¶ 16. In short, Plaintiffs generate revenue by re-selling tickets for a profit and, in the case of S4K, by collecting fees for [*2]transactions on its cloud service. Id. ¶ 13, 48. MSG alleges that the Plaintiffs control over 700 seats at MSG, or nearly 31,000 tickets for Knicks and Rangers games. See Memorandum of Law in Opposition to Motion, at 1.
On March 30, 2016, MSG sent an email to the Plaintiffs notifying them of MSG's intent to strictly enforce a policy of limiting each individual season ticket holder to a maximum of eight (8) tickets per year. See Compl. ¶ 39-40; see also Order to Show Cause, Exhibit L. A subsequent email from MSG to the Plaintiffs stated that, "No single customer will be able to purchase, manage or control more than eight (8) season tickets (directly or indirectly)." Id. Exhibit K. The eight ticket limit is for 2016-2017 only. Thereafter, MSG will limit season ticket holders to four (4) tickets. MSG's stated purpose in implementing these policies is to ensure that a greater number of fans will have access to New York Knicks and Rangers games. See Compl. ¶ 39. In the latter connection, MSG asserts that there is a long waiting list for season tickets to Knicks and Rangers games. Several days later, MSG distributed by email its 2016-17 Knick Season Ticket Subscription Agreement ("Subscription Agreement") to the Plaintiffs and other subscribers affected by the policy. Id. ¶ 52. The Subscription Agreement states in pertinent part that "MSG's [prospective] policy is to limit to four (4)[FN1]
the number of per-game Tickets any single customer may purchase, control, coordinate, manage or direct in connection with either a Knicks or Rangers season through one or more Season Ticket ". See Order To Show Cause, Exhibit M, ¶ 7. In addition, MSG reserved the right to strictly enforce this ticket limit policy by limiting new season tickets subscriptions or revoking subscriptions that violate its policy. See Compl. ¶ 40. MSG seeks to reallocate tickets MSG asserts violate its new policy.
On May 5, 2016, Plaintiffs filed a complaint alleging, inter alia, that MSG's policy violates the letter and the spirit of the New York Arts and Cultural Affairs Law ("ACAL") §25.30(1)(a). Plaintiffs further move for a preliminary injunction enjoining and restraining MSG from re-distributing Knicks and Rangers season ticket subscriptions, and a mandatory injunction compelling MSG to renew subscriptions which MSG "wrongfully refused." Id. ¶ 78. The motion for a preliminary injunction is granted in part and denied in part to these plaintiffs other than JAJ. MSG settled all issues with JAJ in open Court on May 20, 2016.
MSG agreed in open Court to renew the subscriptions of certain individuals identified in the record. And the remaining plaintiffs agreed to withdraw any requests for relief with respect to the individuals identified in Plaintiffs' Exhibit 2 in Evidence, some of which were in fictitious names. What remains to be decided is whether some sixty (60) other individuals will be precluded from having their season subscription cancelled. 
Under ACAL §25.30(1)(a),[FN2]
an operator of a place of entertainment is prohibited from restricting the resale of tickets. In its communication with the Plaintiffs, MSG has restricted the number of tickets that a customer may purchase. MSG is not restricting the ability of any ticket [*3]holder to re-sell tickets in the secondary market.[FN3]
What is more, Plaintiffs may continue to purchase tickets from ticket holders and re-sell them to others. However, what MSG may not do is to arbitrarily, capriciously, and unreasonably determine that different individual season ticket holders are one person or entity. Thus, while it is unclear whether these plaintiffs have standing to challenge determinations made with respect to season ticket holders other than themselves, the Court scheduled a hearing for May 20, 2016 to determine whether MSG is treating its season ticket holders equally and fairly in connection with the implementation of its new policies. The Court finds that MSG may not terminate the season subscription of long-time holders of season tickets based on the circumstance that these long-term ticket holders have either chosen to do business with Plaintiffs or accept financing from Paintiffs. This exercise of arbitrary authority by MSG is unreasonable. On the other hand, individuals who are being used as "strawmen" for Plaintiffs can have their seaason ticket subscriptions rescinded. The parties are directed to meet and confer to properly categorize the individuals identified in Plaintiffs' Exhibit 1 in Evidence.
Contrary to Plaintiffs' argument, ACAL §25.30(1) expressly states that a ticket is a license that is subject to terms and conditions specified by the operator. New York case law supports the proposition that a ticket for admission to a place of public amusement is a license and revocable. See Aaron v. Ward, 203 NY 351 (1911). Here, MSG specified in its Subscription Agreement that customers will be limited to purchasing four (4) tickets per game; its terms do not limit re-sale. Therefore, MSG is not in violation of ACAL §25.30(1)(a). NY Knicks and Rangers ticket holders have the unfettered right to resell their tickets to third parties and if the third party to whom the season ticket holder chooses to sell his or her tickets is a ticket broker like the Plaintiffs, the ticket broker has the right to mark up or mark down the ticket to a price other than the face amount of the ticket.
Neither the Subscription Agreement nor ACAL §25.30(1)(a) requires MSG to sell an unlimited numbers of season tickets to individuals or to grant those individuals a right to perpetual renewal of those season tickets. In fact, MSG's Ticket Subscriptions Terms and Conditions for 2015-16 note in the very first sentence that "Renewal privilege is extended at the option of MSG and is subject to revocation at any time." See Solomon Affidavit in Opposition, Exhibit 5. 
If, as the Court has concluded, ACAL does not govern the issuance of season tickets, then the precedents cited by MSG allowing MSG, pursuant to its Subscription Agreement, to renew or not renew season tickets should apply as long as MSG is not discriminating against season ticket holders in an arbitrary, unreasonable, or capricious manner.[FN4]

Further, it is consistent with public policy for MSG to limit the number of season tickets that any single customer may purchase. In early 2016, the Office of New York State Attorney [*4]General Eric T. Schneiderman released a report pursuant to an investigation of the concert and sport ticket industry. See Order to Show Cause, Exhibit DD. The report criticizes the practice of for-profit entities monopolizing tickets and preventing access to sporting and other events except at egregiously high prices above the face amount of the tickets. The investigation was prompted by frequent complaints to the Attorney General's office that customers are unable to purchase tickets that appear to sell out within moments of the tickets' release, and re-appear on StubHub or other ticket re-sale sites for "substantial markups" only moments later. Id. at 3. The Attorney General's investigation revealed that, on average, only 46% of tickets are reserved for the public. Id. at 11. Further, ticket brokers buy up as many desirable tickets as possible and resell them, on average, at a markup of 49%, or more. Id. at 4. Accordingly, while the Attorney General's report may not currenty address the re-sale pricing of Knicks season tickets, the report recommends greater transparency of the allocations of tickets and the enforcement of ticket limits on a "per-person basis" by ticket vendors. Id. at 5.
Applicants for preliminary injunctive relief, such as the Plaintiffs here, must demonstrate a likelihood of success on the merits, irreparable injury if the injunction is not granted and that a balancing of the equities favors the applicant. See CPLR § 6301; Aetna Insurance Co. v. Capasso, 75 NY2d 860 (1990). A mandatory injunction compelling action is an extraordinary relief, accompanied by financial and other safeguards. See CPLR §§6311-15; see also Uniformed Firefighters Association of Greater New York v. City of New York, 79 NY2d 236 (1992).At the May 20, 2016 hearing held by this Court on Plaintiffs' motion for a preliminary injunction, numerous witnesses testified on behalf of the Plaintiffs, and they may be grouped into two categories. The testimony of these witnesses led to the consensual resolution of many of the issues before the Court. As previously indicated, witnesses (and individuals) who have held season tickets to Knicks or Rangers games for a substantial time, and who have paid for their season ticket subscriptions independently, should not be precluded from renewing their season tickets because the witnesses or individuals have very recently done business with the Plaintiffs or accepted financing from the Plaintiffs, particularly since there was no advance notice given to anyone that MSG would adopt this policy. Other witnesses and individuals are very recent season ticket holders whose season tickets have been paid for by Plaintiffs and these individuals are effectively "strawmen" for Plaintiffs. Under MSG's policies and 2016-17 Subscription Agreement presented in Exhibit M, legitimate ticket holders (e.g., those in the first category) should be able to renew their subscriptions for the number of seats that is consistent with MSG's present policy for the 2016-17 season. However, those whose dealings with MSG is primarily through the plaintiffs (e.g., those in the second category), may have their season ticket subscriptions rescinded.
Passing the issue of the Plaintiffs' standing to act on behalf of season ticket holders (which MSG has not challenged), and passing the issue of whether disputes relating to the renewal of season tickets should be arbitrated (which MSG has not pressed)[FN5]
, MSG cannot [*5]arbitrarily link season ticket holders to the Plaintiffs and deny renewals on that ground unless there is a reasonable and verifiable basis for doing so. Consequently, this motion for a preliminary injunction is granted in part and denied in part without prejudice to the assertion by any other individual ticket holder of a claim that MSG has arbitrarily, capriciously, or unreasonably treated that ticket holder in a discriminatory manner. However, with respect to the individual cases that were presented at the May 20 hearing, MSG must abide by the rulings the Court made on a case by case basis as MSG did not challenge the standing of Plaintiffs to sponsor those claims or invoke MSG's right to arbitrate those claims. To the extent that the Court has found that particular categories of individuals are entitled to renew their season ticket subscriptions, those individuals, passing on the issue of standing, have satisfied the requirements for a preliminary injunction; namely, the likelihood of success on the merits, irreparable injury absent a preliminary injunction, and a balancing of the equities in favor of the Plaintiffs. Plaintiff S4K shall post a bond of $100.00 pending final resolution of this case.
Accordingly, it is hereby ORDERED that plaintiffs' motion for a preliminary injunction is granted in part and denied in part, and the temporary restraining order previously issued by this Court to these Plaintiffs is hereby vacated.
Dated: May 20, 2016
___________________________________
J.S.C.



Footnotes

Footnote 1:Under MSG's 2016-17 New York Knicks Season Ticket Subscription Agreement, new customers will be limited to four (4) season tickets per game, but long-time season ticket holders are permitted to purchase up to eight (8) tickets, if they held that many in the prior season. See Order To Show Cause, Exhibit M, ¶ 7. 

Footnote 2:On May 14, 2016, the New York Arts and Cultural Affairs Law §25.30, we well as other provisions of article 25, was extended through June 30, 2017 by an Act of the New York State Senate and Assembly. 2016 McKinney's Session Law News of NY, Ch. 34 [May 2016] 

Footnote 3:The legislative history of §25.30 suggests that the law was specifically amended to enable tickets purchased by individuals to be freely re-sold, and permitting operators (like MSG) to revoke or restrict season tickets for reasons relating to violations of venue policies. 2010 McKinney's Session Law News of NY, Ch. 151 [July 2010] 

Footnote 4:MSG offered two (2) cases in support of this contention: (1) Mansdorf v. NY Football Giants, Inc., 1993 NY Misc. LEXIS 636 (Sup. Ct. NY Cty. Oct. 28, 1993), and (2) Greenberg v. Sanford, N.Y.L.J., Nov. 18, 1996 (Sup. Ct. NY Cty. Nov. 15, 1996), which are not controlling.

Footnote 5:When customers purchase tickets online on TicketMaster.com or on MSG's websites, they agree to be bound by the terms and conditions of the purchase transaction. See Solomon Affidavit in Opposition, at 16, Exhibits 11, 12. One provision of the General Terms requires binding arbitration for any dispute or claim arising out of the use of the website. Though several exceptions exist which would permit the assertion of a claim in court, such exceptions do not apply to the issue before this Court. When customers buy season tickets online, they are bound by these General Terms.